**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

JULIA TORO COTTO,
   Plaintiff,

v.

LIGA PUERTORRIQUENA CONTRA EL
CANCER, ET AL.,
   Defendants.

Civil No. 04-1285 (HL)

**OPINION AND ORDER**

    Plaintiff Julia Toro Cotto ("Toro") commenced this action against her former employers Liga Puertorriquena Contra El Cancer and Hospital Oncologico Dr. I. Gonzalez Martinez (the "hospital") alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, and Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141.[1] This case was tried before a jury on July 7-14, 2006. On July 14, 2006 the jury returned a verdict in favor of Plaintiff on all claims, awarding $200,000.00 in compensatory damages and $200,000.00 in punitive damages[2]. Before the Court is Defendants' motion for a new trial pursuant to Fed. R. Civ. P. 59.[3] Plaintiff Julia Toro Cotto ("Toro") filed a response in

---

[1] Claims made pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, were dismissed on summary judgment (*see* Dkt. No. 106).

[2] Dkt. No. 128.

[3] Dkt. No. 141. Defendants attempted to file a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 in addition to their Rule 59 motion for a new trial. The Court refused to consider Rule 50 arguments, however, due to the fact that Defendants had not renewed their motion at the close of all evidence pursuant to Rule 50(b). As the Court articulated in its Order of October 24, 2006 (Dkt. No. 176), such an omission precludes review of a Rule 50 motion post-judgment. *See Keisling v. SER-Jobs for Progress,* 19 F.3d 755, 758-59 (1st Cir. 1994) ("If a defendant wishes to

2

opposition to Defendants' motion, and the defendants filed a reply to Toro's opposition.[4] After thorough review of the record and Defendants' motions, the Court finds that their arguments lack merit and finds no reason to upset the jury's verdict.  The Court **denies** Defendants' motion.

### STANDARD OF REVIEW

Rule 59 of the Federal Rules of Civil Procedure permits a party to move to alter or amend the judgment entered pursuant to a jury verdict within 10 days after entry of judgment for any reason for which new trials have been heretofore granted. Fed. R. Civ. P. 59.  The motion for a new trial may be based on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that the trial was not fair to the moving party, and may raise questions of law arising out of the trial. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (U.S. 1940).

"When considering a Rule 59(a) motion 'a district court may set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice.'" *Acevedo-Garcia v. Monroig,* 351 F.3d 547, 565 (1st Cir. 2003) (quoting *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir. 1994)).  The decision to grant a new trial is squarely within the trial court's discretion. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  A jury's verdict on the facts should only be overturned "in the most compelling circumstances", such as "where a 'miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.'" *Wells Real Estate, Inc. v. Greater Lowell Bd. Of Realtors*, 850 F.2d 803, 811 (1st Cir. 1988); *Sostre v. Municipio de Canovanas*, 251 F. Supp. 2d 1055, 1057 (D.P.R. 2003) (quoting

---

renew a motion for judgment as a matter of law at the post-trial stage...the defendant is required to have moved for a judgment as a matter of law at the close of all evidence.") Accordingly, the Court deemed Defendants' Rule 50 arguments waived.

[4] Dkt. Nos. 157, 184.

*Smith v. Delaware Bay Launch Service, Inc.,* 842 F. Supp. 770, 778 (D. Del. 1994)). "A trial judge may not grant a motion for a new trial merely because he or she might have reached a conclusion contrary to that of the jurors, rather, the trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598-99 (1st Cir. 1987).

Normally to challenge the sufficiency of the evidence presented at trial a party must move for a directed verdict at the close of all evidence and follow it with a motion for judgment notwithstanding the verdict. Fed. R. Civ. P. 50 (a) and (b). However, waiver of the right to request a judgment notwithstanding the verdict (as is the case in the instant matter) does not prevent a party from moving for a new trial under Fed. R. Civ. P. 59(a) by alleging the verdict goes against the weight of the evidence. *Velazquez v. Figueroa-Gomez,* 996 F.2d 425, 426-27 (1st Cir. 1993). The trial court has greater discretion in deciding whether or not to grant a new trial than it has in issuing a directed verdict or judgment notwithstanding the verdict because the former does not deprive the parties of a jury determination and is thus viewed with less scrutiny upon appeal. *Birchfield v. International Harvester Co.*, 726 F.2d 1131, 1132 (6th Cir. 1984)

## BACKGROUND

The facts as presented at trial are as follows: Plaintiff began working for the hospital in 1996 as the Coordinator of Medical Utilization. Her job consisted of evaluating medical records of cancer patients. At the time she began working her office was located on the first floor of the hospital. Files from other hospital departments were delivered to her at her office by other staff as needed. Doctors and hospital staff would come to Toro's office for meetings and consultations on the files. Occasionally Toro would travel to the second floor via an elevator to audit and/or verify records. During the period of 1999-2000 Toro also had the help of an assistant who would retrieve records from the clinics and deliver them to Plaintiff's office.

4

In 1997 Toro developed medical problems and was soon thereafter diagnosed with the condition of Fibromyalgia, Chronic Fatigue Syndrome, and major depression. She testified she suffered from severe pain in her muscles, especially in her legs and back, and described the pain as "a very deep, hot pain that starts paralyzing you." (Transcript Volume 1 at p. 18). Toro began receiving treatment in 1998 from Dr. Hector Luis Cotto, a rheumatologist at the same hospital where she worked. She was prescribed medication and began physical therapy with the hospital's physical therapist, Gloria Salinas ("Salinas"). Toro testified that her Fibromyalgia is a permanent condition, consisting of acute generalized pain, constant inflamation, and daily headaches. Salinas further explained that Fibromyalgia is a disease causing skeletal-muscular discomforts. It affects the muscles, tendons, and ligaments and causes much pain, inflammation, weakness, and diminished muscle strength.

Toro informed her immediate supervisor, Milagros Vargas ("Vargas"), of her medical condition and the daily pain it was causing her. Toro testified that upon informing Vargas of the illness, their relationship, which had until then been positive, suddenly deteriorated. She also testified that since she and Vargas worked in the same office she told Vargas almost daily of her pain and difficulty walking, and made certain Vargas had full knowledge of the status of her condition. Toro testified that Vargas would often make light of her condition, dismiss it as "silliness", and mock her pain.

Plaintiff's medical records, admitted into evidence, indicate she suffered from recurrent pain starting in 1998 that worsened with physical activity. She was diagnosed with having "severe" Fibromyalgia. An 18-point test used to diagnose and monitor the condition was administered to Toro, with the results indicating that Toro suffered pain in all 18 of the 18 tested body points. As time passed, Toro's condition worsened and by 2001-2002 she was having trouble walking and would often limp. However, she did not use a cane or wheelchair at this time and was still working. She also began suffering from migraine headaches around the same time. Medical records indicate her pain and general condition worsened in 2001-2002.

5

In 2001 Toro was transferred to the medical building, a separate annex from the main hospital building where she had previously worked.  Plaintiff was given no explanation for the transfer.  Her assistant was no longer working and the hospital did not find a replacement.  As a result, Plaintiff had to do the jobs previously performed by her assistant in addition to her own work.  Records were no longer delivered to her office; Plaintiff had to go to the Records Department herself to retrieve them.  This required her to climb stairs, carry heavy records, walk back and forth between departments, and push a cart to the library.  Plaintiff estimates the cart held up to 200 pounds of files at times.  Defendants dispute this, claiming the files weighed no more than 50 - 100 pounds.  Plaintiff also stated that she had to travel between the second floor records department, the clinics on the first and third floors, the library in the main building and the auditor's office.  A secretary in the medical records department would sometimes assist Toro in locating a file by calling other offices but Toro had to physically retrieve the file herself.

Toro asked Vargas in 2001 to be moved back to her old office in the main building, or in the alternative, to be given a different office in the main building.  Her requests were denied.  Plaintiff testified she was unaware of any other formal procedure for requesting accommodation from the hospital.  When Vargas did not respond to her first request, Toro spoke with the Human Resources Director, Ramon Torres ("Torres"), and again asked to be relocated because of her medical condition.  Torres asked Vargas on Toro's behalf to relocate Toro to the main building because having to walk between the two locations and cart files back and forth was harming her health.  Vargas again refused to accommodate.  Torres testified that during that time he witnessed Toro's difficulty walking and observed her limping and showing signs of pain.  A respiratory therapy supervisor, Neida Martinez, also testified that she observed Toro having great difficulty walking and showing signs of severe pain. In 2002 Toro made another request to be relocated to the main building but Vargas ignored this as well.  Vargas and Nancy Gonzalez ("Gonzalez"), Toro's supervisor after Vargas, testified that Toro never made any requests for accommodation or informed either of them that the Fibromyalgia was interfering with Toro's ability to do her job.

Gonzalez did state, however, that Toro complained of pain and informed her of the need to attend physical therapy.

As a result of her work conditions, Toro testified she suffered from an increased stress level, loss of appetite, and difficulty sleeping. She required greater amounts of medication to function. Her relationship with her daughters suffered as she was unable to care for them or spend as much time with them as she had before. Toro ceased employment with the hospital in April 2003. She began working for a new employer in August 2003 with a higher salary than she had been receiving at the hospital.

## DISCUSSION

Defendants offer five main arguments in support of their motion, which they then divide into smaller contentions. First, Defendants claim that the verdict was against the weight of the evidence introduced as to the ADA claim. They allege: (1) Plaintiff failed to prove her Fibromyalgia condition substantially limited the major life activity of walking; and (2) Defendants engaged in an interactive process with Plaintiff but the accommodations requested by Plaintiff were not reasonable.

Second, Defendants claim the amount of the verdict was excessive in relation to Plaintiff's damages and seek remittitur. Under this theory they argue (1) Plaintiff failed to show a causal relationship between the damages suffered and the discriminatory acts; (2) Plaintiff herself was negligent; (3) Plaintiff failed to mitigate damages; and (4) Plaintiff failed to prove that Defendants were aware of the severity of her condition.

Third, Defendants claim punitive damages were erroneously awarded because Plaintiff did not show that Defendants acted with malice.

Fourth, Defendants claim the amount of damages, as awarded by the jury, are statutorily barred. They maintain that (1) 42 U.S.C. 1981a(b)(3) provides for a statutory cap on damages that may be awarded to a plaintiff based on the number of employees employed by a defendant and the jury's award exceeds the allowable amount; and (2) the hospital cannot be liable under Article 1802 of the Puerto Rico Civil Code.

Fifth, Defendants claim the Court made legal errors in its rulings before and during

trial. They aver that (1) Defense witness, Dr. Hector Luis Cotto, was improperly excluded; and (2) Plaintiff's ADA cause of action is time-barred. The Court shall address each of these arguments in turn.

**I. The Weight of the Evidence**

The Americans with Disabilities Act (ADA) was designed as a civil rights statute to protect the rights and prevent against discrimination of disabled persons. Title I of the ADA addresses employment rights. Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a claim under the ADA, a plaintiff must show (1) that she was disabled within the meaning of the ADA, (2) that she was qualified to perform the essential functions of the job, either with or without reasonable accommodations, and (3) that her employer took adverse action against her because of the disability. *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1166 (1st Cir. 2002).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102(2). In order for a disability to meet the standards of the ADA, the Supreme Court has held three conditions must be met: First, the physical or mental condition must qualify as an impairment; Second, a major life activity within the meaning of the ADA must be limited by the impairment; and Third, the life activity must be substantially limited by the impairment. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

The Court first turns to Defendants' argument that they are entitled to a new trial because Plaintiff failed to prove her disability substantially limited the major life activity of walking. The Court sees no reason to disrupt the jury's verdict on this issue. They, as

triers of fact, listened to and weighed all the evidence at trial and came to the conclusion that Plaintiff had adequately established her case. Plaintiff's treating physical therapist testified that the condition was permanent and severe. The same witness also provided testimony as to Plaintiff's chronic pain and difficulty walking. Other fact witnesses, including co-workers and Toro herself, testified regarding Plaintiff's difficulty walking and the pain it produced. Plaintiff is correct in her assertion that medical testimony is not always necessary to establish a disability. "There is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a lay jury...and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatments and symptoms over a substantial period that would put the jury in a position where it could determine that he did suffer from a disability within the meaning of the ADA." *Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir. 1996). Such is the case here. The Court finds that there was a legally sufficient evidentiary basis for a reasonable jury to conclude that Toro's disability substantially limited her ability to walk and that no "miscarriage of justice" would result by allowing the verdict to stand. *See Smith*, 842 F. Supp. at 778.

Discrimination under the ADA includes not only offensive actions against disabled persons, but also includes failing to make reasonable accommodations for an individual's disabilities. The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).

Defendants argue as grounds for a new trial that the accommodations requested by Plaintiff during an interactive process were impossible to fulfill. They posit that by modifying Toro's work schedule to allow her to attend physical therapy sessions and by providing her with an assistant on two occasions they satisfied their obligation to make reasonable accommodations. Defendants further argue that Toro's request to be moved

back to her first-floor office would have caused undue hardship on the hospital. The jury, however, found otherwise. Toro testified that she specifically discussed her physical limitations with the hospital's Executive Director and Human Resource Director. Plaintiff presented testimony showing the hospital did not openly participate in an interactive process, were elusive in their responses to her requests for accommodation, and that hospital administrators were uncooperative with Plaintiff's requests for a new work station. Additional evidence was presented showing that the assistants assigned to Toro did not actually alleviate her hardships. Finally Toro presented testimony that other offices were available and relocating her workspace would not have created an undue hardship on the hospital. The outcome of this issue depended heavily upon the credibility of each of the parties' witnesses. The jury chose to believe Toro's witnesses over the defendants', and ultimately returned a verdict in her favor. The Court even included a specific question on the verdict sheet submitted to the jury which explicitly addressed the issue of undue hardship.[5] Thus, finding no reason to believe that the verdict constitutes a "miscarriage of justice" nor that it "shocks the conscience," the Court will not grant a new trial in this case. *See Smith*, 842 F. Supp. at 778.

## II. Sufficiency of the Verdict

Defendants next contend that the verdict is excessive in light of Plaintiff's damages. "District courts may grant a motion for new trial or remittitur only if the award 'exceeds any rational appraisal or estimate of the damages that could be based on the evidence before the jury' and is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" *Franceschi v. Hosp. Gen. San Carlos, Inc.*, 420 F.3d 1, 5 (1st Cir. 2005) (quoting *Davignon v. Clemmey*, 322 F.3d 1, 12 (1st Cir. 2003)). The Court will not disturb an award of damages just

---

[5] *See* Dkt. No. 128, question 3, which asks "Do you find by a preponderance of the evidence that Defendants have proven that providing Plaintiff Julia Toro-Cotto with an accommodation would have constituted an undue hardship for Defendants?" The jury responded in the negative.

because it is "extremely generous or because it thinks the damages are considerably less"; an award should only be reversed if it is "so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." *Koster v. TWA*, 181 F.3d 24, 34 (1st Cir. 1999). Defendants put forth numerous arguments in support of a reduction in the amount of damages awarded. Most can be characterized, at best, as feeble attempts to grasp at straws. They consist of misunderstandings and mischaracterizations of the law and/or overly broad ramblings, put forth without any regard for relevance, succinctness or validity.

Defendants posture that Plaintiff was negligent by not following through with her physical therapy regiment and this was the proximate cause of her injuries, not the hospital's actions. Under this reasoning, Defendants believe the verdict cannot be sustained because there was no nexus between Plaintiff's injuries and Defendants' behavior. Under similar reasoning, Defendants also argue that Plaintiff failed to mitigate damages, again by not following her doctor's treatment plan for physical therapy, and was herself negligent.  None of these arguments carry weight. Defendants appear confused as to the nature of the cause of action. This claim was brought pursuant to the ADA, alleging a failure to reasonably accommodate Plaintiff's disability. It is not a claim for personal injury; at no time has Plaintiff accused the hospital or its employees of *causing* Plaintiff's disability. The fact remains that Plaintiff suffered from the condition of Fibromyalgia and required accommodations to perform her job. It is for this reason Defendants were sued.

As stated above, an employer is guilty of discrimination under the ADA when the employer does not make reasonable accommodations to the known physical limitations of a qualified individual. 42 U.S.C. § 12112(b)(5)(A). The jury found Defendants did not comply with the ADA requirements in this regard. There is simply no causation element in an ADA claim. Plaintiff's Commonwealth claims brought pursuant to Article 1802 of the Puerto Rico Civil Code, 31, L.P.R.A. § 5141, stem also from this ADA violation. Plaintiff's sought redress under § 1802 for Defendants' negligence in not adhering to the ADA provisions, not for causing her Fibromyalgia. As such, the Court finds Plaintiff's

10

attendance at physical therapy sessions irrelevant to this issue. Compensatory damages were awarded for Toro's mental pain and anguish. As there was testimony sufficient to establish mental suffering, the damages are warranted.

Moreover, if Defendants wished to raise these issues, the proper time to do so was during trial so that the jury may have considered it along with all the other evidence. The fact that the jury was not presented with this theory, or that they choose to disregard it, does not now permit Defendants to use it as grounds for remittitur or a new trial.

Defendants next contention, that the hospital was not aware of the severity of Toro's condition, is also without merit. This too is an issue of credibility that the jury already decided. Though Defendants claim they were unaware of the severity of the Fibromyalgia, Plaintiff's witnesses claim her condition was disclosed. Though Defendants devote several pages of their brief to the fact that Toro did not voluntarily provide her confidential medical records to her employer, the Court cannot see the relevance of this fact. Plaintiff was not required to provide her medical records, and the absence of these records does not mean that the hospital was not informed in other ways of Plaintiff's limitations. Likewise, the fact that Plaintiff did not require a wheelchair or cane does not mean she did not have problems walking. Defendants seem to argue that because pain cannot be seen, it must not have existed (see Defendant's motion, Dkt. No. 142 at p. 41). The Court need not waste its time addressing such frivolous arguments. Plaintiff's pain and difficulty walking was something to be established at trial, and indeed it was. Ultimately the jury chose to believe Plaintiff's version of facts. The Court will not disrupt this determination.

Defendants also believe that since Toro's condition pained her prior to 2001, when she ultimately requested accommodations, the hospital cannot be held liable. Again, Defendants' thinking is confused. Plaintiff requested accommodation in 2001 because that is when her job conditions changed and began to interfere with her ability to work with the disability. Specifically, in 2001 her office location was changed, requiring her to climb stairs and walk longer distances to retrieve and distribute files. Toro did not need

11

accommodation prior to that time because she was able to perform her job without accommodation. Thus the fact that her condition existed prior to her asking for accommodation is not at issue. The change in Toro's job environment triggered her request for accommodation, not the development of the condition.

Lastly, Defendants aver that damages should be reduced because "Plaintiff did not present any expert witness to establish her alleged emotional damages and sufferings." Dkt. No. 141 at p. 45). It is well established in this Circuit that expert testimony is not required to sustain an emotional distress award. *Sanchez v. P.R. Oil Co.,* 37 F.3d 712, 724 (1st Cir. 1994). Toro testified that she suffered from depression and anxiety as a result of her job situation. She also testified to increased stress levels, a loss of appetite, and difficulty sleeping. Her relationship with her children suffered as a consequence. Similar testimony has been found sufficient in other cases to support a jury award for damages. *See i.e. Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.,* 399 F.3d 52, 64(1st Cir. 2005); *Koster,* 181 F.3d at 35-36.

The Court does not find the $400,000.00 in total damages awarded by the jury to be excessive. As the damages do not "shock the judicial conscience" or show "prejudice on part of the jury," the Court will not grant a remittitur in this case. *See Franceschi*, 420 F.3d at 5.

### III.  Punitive Damages

The jury in this matter awarded $200,000.00 in punitive damages[6]. Defendants argue that punitive damages are not warranted because the hospital did not act with malice. A complaining party may recover punitive damages against a respondent in an ADA case if the complaining party shows that the respondent engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1). The terms "malice" and "reckless indifference"

---

[6]*See* Dkt. No. 128.

pertain to the employer's knowledge that she may be acting in violation of federal law. *Kolstad v. Ada*, 119 S. Ct. 2118, 2124 (1999). A jury is permitted to assess punitive damages when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 2125 (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). The Supreme Court went on to explain their decision in *Smith*, saying that while it is unnecessary to show actual malice in order to qualify for a punitive award, "recklessness in its subjective form" must be demonstrated. *Id.* Ultimately an employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* There was ample evidence presented at trial to meet this standard. Defendants argue that they made a good faith effort to accommodate Plaintiff and that the steps they took preclude a finding of malice. This argument too falls short, as caselaw clearly indicates a showing of malice is not required. The Court again defers to the jury verdict.

**IV. Statutory Provisions**

    **A. 42 U.S.C. § 1981a**

*Damages awarded in intentional employment discrimination cases are subject to* the express limitations of 42 U.S.C. § 1981a(b)(3). Specifically this statute provides that combined compensatory and punitive damages awarded for an ADA claim are capped according to the number of employees a defendant has during the relevant period. The parties in this matter have stipulated that Defendants had 250 employees. *See* Dkt. No. 134. Given this number, the maximum amount of combined damages allowable for Plaintiff's ADA claim is $200,000.00. 18 U.S.C. § 1981a(b)(3)(C). Defendant now argues that this statutory cap warrants a remittitur of the $400,000.00 total damages

13

awarded[7]. This argument fails because the jury found in favor of Plaintiff on her claims under Article 1802 of the Puerto Rico Civil Code in addition to her ADA claims. *See Gagliardo v. Connaught Laboratories, Inc.,* 311 F.3d 565, 570 ( 3rd Cir. 2002) (holding that Section 1981a does not prevent a claimant from recovering damages greater than the federal statutory cap under a state law claim that is virtually identical to a capped federal claim); *Rodriguez-Torres,* 399 F.3d at 66. A district court has an obligation to uphold lawful jury awards whenever reasonable. *Gagliardo* at 571. Accordingly, the Court apportions the jury award as follows: $200,000.00 in punitive damages awarded are attributed to the ADA claim, thereby adhering to the statutory cap; $200,000.00 in compensatory damages are attributed to the Article 1802 claim.

### B. Article 1802, Puerto Rico Civil Code

Article 1802[8] is the applicable Commonwealth statute for negligence claims, often applied in conjunction with Article 1803, which allows for claims against an employer for the acts or omissions of her employees. 31 L.P.R.A. §§ 5141, 5142. Defendants claim they cannot be held liable under 1802 because there was an official anti-discrimination policy in place at the hospital and **"**to discriminate" was not listed as an official duty of any employee (including its Executive Director, Milagros Vargas, whose actions spurred Toro's claim). They contend that since Vargas was not explicitly instructed to discriminate against others as part of her job description, any discriminatory actions she took were prompted by personal motives and the hospital cannot be liable for same. This

---

[7]Though Defendants refer repeatedly throughout their brief to "Title VII" limiting the amount of possible damages, the Court assumes this is yet another example of their lack of proofreading. As this case proceeded under the ADA and all Title VII claims were dismissed on summary judgment (see Dkt. No. 106), the correct argument would be that a statutory cap exists as to the amount of damages allowable under the ADA. The Court shall proceed with its analysis as if the correct statute, the ADA, had actually been cited.

[8]"A person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." 31 L.P.R.A. §§ 5141.

14

argument completely misses the mark. The Court need not expand any further on such a disingenuous notion. Accordingly, it is categorically rejected. The jury's finding for Plaintiff on her Article 1802 claims finds support in the evidence.

## V. The Court's Prior Rulings

### A. Exclusion of Dr. Hector Cotto's testimony

Defendants object to the Court's exclusion of Dr. Hector Luis Cotto's testimony at trial and maintain this harmed their defense. Dr. Cotto evaluated and treated Toro's Fibromyalgia when it was first diagnosed in 1998. Plaintiff objected to Dr. Cotto being called as a witness because they were not properly notified of Defendants' plan to do so until the eve of trial and thus did not have an opportunity to conduct discovery. Defendants claim they were not aware of Dr. Cotto's existence until summary judgment motions were filed, well past the discovery period, and it was for this reason he was not previously named as a defense witness. After hearing arguments from both parties during trial, the Court ultimately precluded Dr. Cotto from testifying. Defendants claim his testimony was necessary to rebut the evidence given by Plaintiff's physical therapist, Gloria Salinas, at trial. Specifically they assert Dr. Cotto's testimony would have been used to rebut Ms. Salinas' interpretation of Plaintiff's Fibromyalgia, to explain the differences between Fibromyalgia and other impairments and to interpret Plaintiff's medical record. This argument fails for several reasons.

First, Defendants were aware Gloria Salinas would be testifying and had information regarding the nature of her testimony as she was properly disclosed as a potential witness during the discovery stage. The purpose of providing this information in advance of trial was so that Defendants could depose the witness, examine her proposed testimony, and decide whether or not to call a witness, expert or otherwise, of their own to refute her statements. Defendants choose not to notice any expert witness in accordance with the Court's deadlines for same. They cannot now argue that Dr. Cotto's testimony is necessary to challenge Ms. Salinas' interpretation of Plaintiff's Fibromyalgia, to explain

the differences between Fibromyalgia and other impairments or to interpret Plaintiff's medical record. Any other doctor could have been called to provide the same evidence yet Defendants choose not to do so. The fact that Dr. Cotto treated Toro in 1998 is irrelevant to the above proposed testimony. Defendants now complain that the Court's decision to exclude this undisclosed witness was unfair because Plaintiff presented witnesses in the medical field while they did not. Nothing precluded Defendants from properly announcing a medically-trained witness during the discovery process. That they now regret their defense strategy and case management decisions is not grounds for a new trial.

Additionally, Dr. Cotto was no longer treating Plaintiff's condition during the relevant time period. There was no evidence presented to suggest that Toro's Fibromyalgia condition did not actually exist, nor do Defendants claim Dr. Cotto would testify as such. Hence, whether or not Dr. Cotto diagnosed the condition in 1998 is irrelevant to her treatment and/or management of the condition in 2001 through the present. The issue at hand in this trial was the effect of the condition at the time she requested accommodation from her employer. Dr. Cotto's testimony would not substantially alter or greatly enhance the testimony already provided in this regard. His omission does not amount to the harm or prejudice needed to warrant a new trial.

The Court need not comment on Defendant's nebulous assertion that Plaintiff deliberately tried to confuse the jury with references to her psychiatrist, also named Dr. Cotto, in the hopes that jury members would think the two doctors were in fact the same person. The Court is certain the jury members are intelligent enough to distinguish between the two similarly-named doctors. Such preposterous arguments are a waste of this Court's valuable time and do not belong in a legitimate Rule 59 motion.

**B. Timeliness of Plaintiff's Claim**

Defendants argue that Plaintiff's cause of action is time-bared and must be

dismissed as a matter of law[9]. The proper means for brining such an argument at this stage is through a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Even if the Court were to decide, *arguendo*, that this argument has merit, there is no adequate remedy under Rule 59.  As previously discussed, Defendants waived their rights under Rule 50 for a judgment as a matter of law by not renewing their objections at the close of all evidence.[10]  As such, the Court deems this argument waived and need not address it here.

## CONCLUSION

**WHEREFORE,** Defendant's motion for a new trial is denied.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, February 14, 2007.

S/ HECTOR M. LAFFITTE<br>Senior United States District Judge

---

[9] This same argument was previously addressed and rejected at the summary judgment stage. *See* Dkt. No. 106.

[10] *See* note 3, *Supra*.; Dkt. No. 141.